UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-CV-P36-TBR

**KENDERICK ELLISON**  **PLAINTIFF**

v.

**MARIE A. BRINDLE** *et al.*  **DEFENDANTS**

<u>**MEMORANDUM OPINION**</u>

This matter is before the Court upon on motion by Defendants, Deputy Commissioner Randy White, Deputy Warden Steven Ford, Deputy Warden Bruce Von Dwingelo, correctional officer Marie A. Brindle, and maintenance manager Jeremy Belt, for summary judgment pursuant to Federal Rule of Civil Procedure 56. [DN 36]. Plaintiff, Kendrick Ellison, has not responded and the time to do so has passed. This matter is ripe for review and for the following reasons Defendants' motion for summary judgment is **GRANTED.**

**BACKGROUND**

Plaintiff Kenderick Ellison, a convicted inmate incarcerated at the Kentucky State Penitentiary ("KSP"), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against the following KSP officers: Correctional Officer Marie A. Brindle, Warden Randy White, Maintenance Branch Manager Jeremy Belt, Deputy Warden of Security Steve Ford, and Deputy Warden Bruce Von Dwingelo. Plaintiff alleges that Defendant Brindle filed a false disciplinary action against him after he filed a grievance against another KSP officer. Plaintiff also alleges that inmates engage in sexual acts in "KSP Shower House" and that Defendants White, Belt, Von Dwingelo, and Ford have stated that "KSP shower house is violation of state and [federal] standards." Plaintiff Ellison filed the complaint with another KSP inmate, Gerald McKinney. However, by Memorandum and Order

1

entered August 4, 2017, the Court dismissed Gerald McKinney from this action for failure to prosecute. [DN 13].

On September 6, 2017, the Court reviewed the complaint under 28 U.S.C. § 1915A. The Court construed Plaintiffs claims as (1) a First Amendment retaliation claim and (2) an Eighth Amendment deliberate indifference claim. The Court concluded that both claims should be allowed to continue for further development. Now before the Court is Defendants' motion for summary judgment. Plaintiff has not responded to the motion, and the time to do so has passed. On February 6, 2019, the Court issued an order pursuant to *United States v. Ninety-Three Firearms*, 330 F.3d 414 (6th Cir. 2003) providing Plaintiff with guidance in responding to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and granted Plaintiff an additional thirty days to respond. Those thirty days have now passed and Plaintiff has chosen not to respond. The facts relevant to this opinion are as follows:

**The Retaliation Claim:**

On November 15, 2016, Plaintiff filled out a grievance complaining that a KSP officer named Rachel Hughes had informed him that she would not let him into any inmate programs while Plaintiff was housed at KSP. [DN 36-2]. At the informal resolution stage, prison officials found that Plaintiff had not produced any evidence that Hughes was denying Plaintiff the opportunity to participate in programs. [*Id.*]. In fact, the informal resolution report states that Hughes had already recommended Plaintiff for enrollment in five programs prior to the filing of his grievance. [*Id.*]. Plaintiff was advised that "KSP fills its programs with inmates from the program recommendation screen in accordance to Parole Date, serve out date, and recommended date." [*Id.*].

Plaintiff alleges that on December 23, 2016, Defendant Brindle stopped him on the KSP prison yard to ask him why he had filed the grievance against Hughes. Plaintiff also alleges that Brindle told him "you should have waited a little longer" before filing the grievance and "I'm assigned to your walk now and your and un-assigned inmate without a job so that means you must be back in your cell before 12:15 lock up, or I'll do you like you did c/o Brindle[1] and put you on paper only I won't have patient like you." [DN 1]. Plaintiff further alleges that, also on December 23, "I came in my cell at 12:15 let in for un-assign lock up and c/o Brindle saw that I was in my cell on time however c/o Brindle told me that she was going to lock me up any way because she doesn't have patience like I did not have patience with Ms. Hughes." [*Id.*]. Brindle issued Plaintiff a disciplinary report on December 27, 2016. [DN 36-3]. In the disciplinary report, Brindle documented that Plaintiff had arrived at his cell at approximately 2:15 p.m. At the disciplinary hearing held on February 8, 2017, the Adjustment Committee reviewed camera footage and concluded that Plaintiff was in his cell at the appropriate time and dismissed the disciplinary report. [*Id.*]. Plaintiff alleges that Brindle filed the meritless disciplinary report in retaliation for his act of filing a grievance against Hughes.

**The Deliberate Indifference Claim:**

On March 6, 2017, Plaintiff filled out a grievance in which he complained that Defendant Belt, in a grievance made by McKinney, had stated that the KSP shower house was scheduled to be totally renovated by June 2016 in order to bring it into compliance with today's standards. [DN 36-4]. Plaintiff further asserted that "KSP Shower house is currently in violation of PRE standards and State" standards. [*Id.*]. Plaintiff alleged that Defendants knew of the dangerous conditions of

---

[1] The Court assumes that Plaintiff meant to refer to Hughes.

the shower house but had failed to complete safety renovations to prevent sexual assaults and rape. [*Id.*].

In his complaint, Plaintiff complains that he was showering at KSP shower house on March 7, 2016 when he observed two inmates engaged in sexual acts and another inmate masturbated while staring at Plaintiff. [DN 1]. Plaintiff states in his complaint:

> I filed a grievance about the condition of KSP shower house and cite Maintenance Branch director and Warden White and Bruce Von-dwingelo and Steve Ford's statement in other grievance file by Gerald McKinny that KSP Shower house is violation of State federal Standards and requested that the shower house be closed down because of the conditions I must shower in. These defendants refuse to close KSP shower house and force's me to shower under these conditions.

[*Id.*]. Defendants argue that they were unaware of the alleged March 7 incident at the shower house prior to the initiation of this civil action and deny that it occurred. Defendants also argue that the shower house is compliant with relevant safety standards and that a correctional officer is present at all times the shower house is in use.

**STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 556 (6th Cir.

4

2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestle USA, Inc.*, 694 F. 3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).

As the party moving for summary judgment, Defendants must shoulder the burden of showing the absence of a genuine dispute of material fact, as to at least one essential element of each of Plaintiff's claims. Fed. R. Civ. P. 56(c); *see Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If Defendants satisfy this burden, Plaintiff "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324). Although Plaintiff has not opposed the motion for summary judgment, a verified complaint "carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

## DISCUSSION

Plaintiff has not responded to Defendants' motion for summary judgment and the time to do so has passed. In fact, the Court issued an order explaining the consequences of failure to respond to the motion and providing Plaintiff with guidance on how to respond. [DN 39]. Furthermore, the Court granted Plaintiff additional time to respond to Defendants' motion for summary judgment. [*Id.*]. Even after being warned and granted additional time, Plaintiff has chosen not to respond to the motion for summary judgment. Pursuant to Joint Local Rule of Civil Practice 7.1(c), "[f]ailure to timely respond to a motion may be grounds for granting the motion." *See also Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (recognizing that a party's lack of response to a motion or argument therein is grounds for the district court's grant of an unopposed

motion to dismiss and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); *Paulmann v. Hodgdon Powder Co., Inc.*, No. 3:13-CV-0021-CRS-DW, 2014 WL 4102354, *1-2 (W.D. Ky. Aug. 18, 2014) (holding that plaintiffs failure to respond or otherwise oppose defendant's motion to dismiss established that the plaintiff had waived opposition to the motion). Because Plaintiff has failed to oppose Defendants' motion for summary judgment, he waives opposition to the motion.

Nevertheless, the Court shall determine whether Defendants have satisfied their burden under Federal Rule of Civil Procedure 56, which requires the moving party to demonstrate that there is no genuine dispute of material fact and that the moving party is therefore entitled to judgment as a matter of law. *See Miller v. Shore Fin. Servs. Inc.*, 141 Fed. App'x 417, 419 (6th Cir. 2005). The Court will address each of Plaintiff's claims individually.

### I. Deliberate Indifference.

Plaintiff alleges that he has been subjected to unsafe conditions of confinement because other inmates engage in sexual acts in "KSP Shower House," and because "KSP Shower House" is in violation of state and federal standards. [DN 1 at 5]. Plaintiff claims that Defendants White, Belt, Von Dwingelo, and Ford are liable to him for the unsafe conditions of confinement under a theory of deliberate indifference. Defendants argue that Plaintiff has failed to exhaust his administrative remedies with respect to his deliberate indifference claim. Defendants also argue that there is no dispute of fact regarding the objective and subjective prongs of the deliberate indifference rule.

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citation and quotation marks omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ." *Id.*

Defendants have informed the Court that there is no genuine dispute of material fact regarding whether Plaintiff completed the jail's internal grievance procedure prior to filing his complaint with this Court. [DN 36-1 at 10-12]. However, Defendants misconstrue Plaintiff's claim. Defendants argue that, because he did not file a grievance specifically regarding the alleged March 7, 2017 incident he describes in his complaint, Plaintiff has not exhausted his administrative remedies for his claim that the shower house is unsafe. But Plaintiff's claim is that the shower house is generally unsafe, not that it was only unsafe on March 7. Plaintiff is not bringing the deliberate indifference claim based on an isolated incident of sexual acts in the shower house. Furthermore, Plaintiff did file a grievance on March 6, 2017 complaining that "Shower house is currently in violation of PRE Standards and State" standards. [DN 35-4 at 2]. Plaintiff complains in his grievance of the "dangerous condition of KSP Shower House Sexual Assault's and Rapes." [*Id.* at 2-3]. The fact that Plaintiff mentions a specific incident in his complaint with this Court that occurred one day after he filed his grievance internally with KSP complaining of general safety concerns does not logically render his claim unexhausted. Defendants do not allege that he failed to complete all of the internal appeals procedures that were available to him as is required by *Booth v. Churner*, 532 U.S. 731, 734-35 (2001) or that he otherwise failed to comply with KSP policies and procedures. For the foregoing reasons, Defendants have failed to satisfy their burden under Rule 56 regarding their argument that Plaintiff did not exhaust available administrative remedies.

7

Defendants have, however, met their burden by establishing that there is no genuine dispute of fact regarding the merits of Plaintiff's deliberate indifference claim. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citations omitted). While "[t]he Constitution does not mandate comfortable prisons," the United States' founding document does not "permit inhumane ones [either], and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id.* at 832 (internal citations omitted). Relevant to this case, the Eighth Amendment "imposes duties on...officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures *to guarantee the safety* of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) (emphasis added)).

To maintain an Eighth Amendment deliberate indifference claim for failure to prevent harm, it is necessary to allege both an objective and subjective component. *Farmer*, 511 U.S. at 834. "[A] prison official violates the Eighth Amendment only when two requirements are met." *Id.* "First, the deprivation alleged must be, objectively, sufficiently serious, . . . a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (citations and quotation marks omitted). "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted).

The Plaintiff must also allege a subjective requirement to state a claim for deliberate indifference. "To violate the Cruel and Unusual Punishments Clause, a prison official must have

8

a sufficiently culpable state of mind . . . [i]n prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety. . . ." *Id.* (citations omitted). "Deliberate indifference is a state of mind akin to criminal recklessness: the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hamilton v. Eleby*, 341 F.Appx 168, 171 (6th Cir. 2009) (quotation marks and citations omitted). In other words, Plaintiff may only prevail on his deliberate indifference claim in this case if Defendants disregarded a substantial risk of serious harm of which they were aware. *See Farmer*, 511 US at 837.

Defendants are entitled to summary judgment because there is no genuine dispute of fact regarding whether they were aware of a substantial risk of serious harm. There is no evidence on the record that Defendants were aware that inmates faced a substantial risk of serious harm due to the conditions of the shower house. Each Defendant attests that he had no knowledge of the alleged March 7 sexual activity prior to the initiation of this civil action. [DN 36-9; DN 36-10; DN 36-11; DN 36-12]. The only evidence presented in Plaintiff's complaint on this issue is a statement allegedly made by Defendant Belt. Plaintiff alludes to this statement in his complaint, and quotes it in his March 6 grievance as follows: "The shower house is scheduled to be totally renovated by Jun. 2016 to bring it in compliance with today's standards." [DN 36-4]. Belt allegedly made this statement in an informal response to McKinney's grievance. Defendant Belt's affidavit is consistent with Plaintiff's characterization of the statement, but also includes the following: "There will be dividers installed, once finished this should resolve all issues." [DN 36-12][2]. Neither party has filed McKinney's grievance with the Court. The Court must therefore rely on the evidence on

---

[2] Belt attests that he wrote: "The shower house is scheduled to be totally renovated by June 2016 to bring it in compliance with today's standards. There will be dividers installed, once finished this should resolve all issues." [DN 36-12].

the record to determine the nature of McKinney's complaint and whether it put the Defendants on notice of a substantial risk of serious harm in the shower house.

Two Defendants—Ford and Von Dwingelo—attest that they did not have knowledge of McKinney's grievance prior to the initiation of this civil action. [DN 36-10; DN 36-11]. The two Defendants who did have knowledge of the suit—White and Belt—characterize it as addressing privacy concerns, not safety concerns. [DN 36-9; DN 36-12]. Furthermore, it is undisputed that a correctional officer is present at all times when the shower house is open for use. Each Defendant attests that he knew a guard was always on duty while the shower house was in use. The presence of a correctional officer substantially reduces the risk of serious harm. Placing a guard in the shower is also a reasonable measure to abate any risk of serious harm that may arise in the shower house. The Defendants argue that McKinney's grievance was complaining of privacy concerns and that the renovations mentioned by Belt are to "afford each inmate more privacy. . . ." [DN 36-9 at 3]. Defendants have supported these arguments with affidavits. The undisputed evidence on the record, therefore, is that McKinney complained of privacy issues in the shower house and Belt's statement that renovations were underway that "once finished . . . should resolve all issues" was regarding the resolution of privacy issues and not safety concerns. [DN 36-12].

The Court granted Plaintiff extra time to respond to Defendants' motion with his own evidence and to address the arguments presented in the motion, but he has elected not to do so. There being no genuine dispute of fact under the subjective prong of the deliberate indifference claim, Defendants are entitled to judgment as a matter of law.

## II. First Amendment Retaliation.

Plaintiff alleges that Defendant Brindle filed a false disciplinary action against him after he filed a grievance against Hughes, another KSP officer. Because his grievance against Hughes was not a protected activity, Plaintiff has failed to state a First Amendment Retaliation claim. To establish a First Amendment retaliation claim, a prisoner must prove that "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394-98 (6th Cir. 1999) (en banc)). "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (citing *Nobel v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). "This right is protected, however, only if the grievances are not frivolous." *Herron*, 203 F.3d at 415 (citing *Lewis v. Casey*, 518 U.S. 343 353 (1996) ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."). Thus, an inmate's right to file a grievance is protected conduct only to the extent that the underlying claims have merit. *See Herron*, 203 F.3d at 415.

In this case, Plaintiff's grievance against Hughes was frivolous, and therefore not protected conduct. Plaintiff filed his grievance against Hughes on November 15, 2016, alleging that she would not allow him into any programs within the prison. [DN 36-2 at 2]. However, Hughes had already recommended Plaintiff for five programs when Plaintiff filed his grievance. [DN 36-2 at 3]. Plaintiff's grievance was dismissed because he "provided no evidence that Mrs. Hughes has denied [him] the opportunity to participate in programs." The Court finds that Plaintiff's meritless

11

grievance was frivolous. Because his grievance was frivolous it is not protected by the First Amendment. Therefore, there is no genuine dispute of fact regarding whether Plaintiff "engaged in protected activity" and Defendant Brindle is entitled to judgment as a matter of law. *Hill*, 630 F.3d at 472.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED.** The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 6, 2019

CC: Counsel of Record
CC: Kendrick Ellison, *Pro Se*, 243785
 Kentucky State Penitentiary
 266 Water Street
 Eddyville, KY 42038